**IT IS SO ORDERED.**

Dated:  03:44 PM November 08 2006

MARILYN SHEA-STONUM
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 05-52803 |
| | ) | |
| COMMERCIAL MAINTENANCE & | ) | CHAPTER 7 |
| REPAIRS, INC. | ) | |
| | ) | |
| DEBTOR(S), | ) | |
| | ) | |
| HAROLD A. CORZIN, TRUSTEE. | ) | **ADVERSARY NO. 06-5009** |
| | ) | |
| PLAINTIFF(S), | ) | JUDGE MARILYN SHEA-STONUM |
| | ) | |
| vs. | ) | |
| | ) | |
| STEVE HARVEY, ET AL., | ) | |
| | ) | |
| DEFENDANT(S). | ) | |

**MEMORANDUM OPINION**
**(I) GRANTING PLAINTIFF'S MOTION TO COMPEL DISCOVERY FROM DEFENDANT, MIKE ABEL**
**(II) DENYING DEFENDANT, MIKE ABEL'S, MOTION FOR PROTECTIVE ORDER OR, IN THE ALTERNATIVE, FOR *IN CAMERA* INSPECTION**

This adversary proceeding is before the Court on Plaintiff-Trustee, Harold A. Corzin's ("Plaintiff") Motion to Compel Discovery From Defendant, Mike Abel (docket #65)("Motion to Compel"); the Memorandum of Defendant, Mike Abel ("Defendant") in Opposition to Plaintiff's Motion (docket #67)("Memorandum"); the Amended Verified Reply of Plaintiff to Defendant's Memorandum (docket #69)("Reply"); and Defendant's Response to 10/26/06 Court Order (docket # 75)("Response").[1] The foregoing pleadings relate to the Plaintiff's First Set of Interrogatories and Requests for Production of Documents ("Requests") filed on May 10, 2006.[2] After a pretrial conference on October 25, 2006 ("Pretrial"), the matter was taken under advisement by the Court.[3]

This proceeding arises in a case referred to this Court by General Order No. 84 entered on July 16, 1984 by the United States District Court for the Northern District of Ohio. This matter is a core proceeding under 28 U.S.C § 157(b)(2)(O) over which the Court has jurisdiction pursuant to 28 U.S.C § 1334.

---

[1] Pursuant to this Court's October 26, 2006 Order and Memorandum re: Pre-Trial Conference (docket # 73)("Order"), Defendant was ordered to file and serve on all interested parties a list of Sixth Circuit and/or U.S. Supreme Court authorities in support of his argument that the requested tax records are privileged for purposes of this proceeding.

[2] The Requests were also served upon defendants Steve Harvey, Victoria Fair, and Alissa Harvey. As stated in the Order, any issues pertaining to unresolved discovery matters involving the other defendants will be addressed during the November 8, 2006 pre-trial.

[3] Following the Pretrial, Defendant filed a Motion For Protective Order or, In The Alternative, Motion for *In Camera* Inspection (docket #76)("Motion for Protective Order"). It pertains specifically to certain bank records (check registers and other documents relating to Defendant's business bank accounts) and title company documents (title records and escrow accounts). Defendant received the title company documents from America's Choice Title Agency, Inc. and America's Choice Services, Inc., both of which are owned, in part, by Defendant. The Court has decided to addresses the issues raised in the Motion for Protective Order here.

## I. BACKGROUND

Commercial Maintenance & Repairs, Inc.("CMR"), an Ohio corporation, filed a voluntary petition under Chapter 7 of the Bankruptcy Code on May 10, 2005 in this Court. Defendant is an attorney licensed to practice law in the State of Ohio, and allegedly one of CMR's principals. On January 16, 2006, Plaintiff filed an adversary proceeding against Defendant and others[4] seeking relief under eleven separate causes of action[5]. The allegations arise from the transfer of assets from CMR to other entities.

It should be noted preliminarily that on April 24, 2006, defendants Victoria Fair, Fair Leasing, Steve Harvey, and Milling Away filed a Motion to Withdraw the Reference (docket #43) and Brief in Support (docket #44) requesting immediate transfer of this adversary proceeding to the United States District Court for the Northern District of Ohio, Eastern Division, and asserting an absolute right to a jury trial. On April 28, 2006, the Motion to Withdraw the Reference and supporting

---

[4] The other named defendants in this matter are: Steve Harvey (CMR's CEO), Victoria Fair (CMR's Vice President and wife of Steve Harvey), Alisa Harvey (Steve Harvey's daughter and general partner of the majority shareholder, Super Herro Too, LTD), Kryste Lillquist (employee and/or leased employee of CMR), Super Herro Too, LTD (an Ohio Limited Partnership), Ohio Maintenance & Renovation ("OMR"), Retail Maintenance Services, LLC ("RMS"), Milling Away, LLC ("Milling Away"), Commercial Retail Construction, LLC ("CRC"), Fair Leasing, LLC ("Fair Leasing"), Ohiowide Leasing, LLC ("Ohiowide"), One Source Leasing, LLC ("One Source"), and Stesa Properties ("Stesa"). Defendant is the statutory agent for OMR, RMS, Milling Away, CRC, Fair Leasing, Ohiowide, and One Source. Default judgment was entered against One Source, CRC, Super Herro Too, and OMR on March 22, 2006 (docket #34), and against Ohiowide on June 8, 2006 (docket #58).

[5] The eleven causes of action are as follows: fraudulent transfer pursuant to 11 U.S.C. § 548, fraudulent transfer pursuant to O.R C. §§ 1336.05 and 1336.06, usurpation of corporate opportunity, breach of fiduciary duty, conversion, unjust enrichment, aiding and abetting, civil conspiracy, alter ego, successor liability, and substantive consolidation.

documents were transmitted to the District Court and assigned to Judge James Gwin. Since no ruling has been entered to date by the District Court, this Court will continue to preside over the pretrial process as if the case were being tried by the Bankruptcy Court.

## II. DISCUSSION

**A.** *Introduction*

During the Pretrial, the Court asked Plaintiff's counsel to identify with specificity the requested documents that had not been supplied by Defendant. Plaintiff recited several categories of outstanding documents, including, *inter alia*, bank records, tax returns,[6] bills, accounts receivable, and ledgers demonstrating receipts and payments on behalf of CMR. Although Plaintiff admitted that some additional documents had been supplied since the filing of the Motion, he informed the Court that Defendant's responses were still completely deficient.

Defendant submits that the requested documents are protected from disclosure because they are either irrelevant or privileged. Specifically, he claims that certain information relating to his private financial and related business information does not pertain to his representation of CMR and is, therefore, not relevant because "[t]here is no allegation that Abel stripped the company of assets for his personal gain." (Memorandum, p.16 ). The core of Defendant's privilege objection is that the requested information falls within the scope of the work product and attorney-client privilege doctrines, and therefore, Defendant is obligated to protect his clients' privileged and confidential information.

---

[6] Interrogatory # 7 requests returns from the years 2003, 2004, and 2005. In light of Defendant's Response, which deals specifically with the issue of the privileged nature of the tax returns, this Court will address those arguments separately, *infra*.

-4-

The basis of Defendant's Motion For Protective Order is that the bank accounts are privileged and/or irrelevant because they involve clients of Defendant that are not parties to this litigation. With respect to the title company documents, Defendant asserts that the request is overbroad and unduly burdensome because it would result in the production of thousands of documents. In addition, Defendant maintains that the title company documents are privileged under the Gramm-Leach Bliley Act ("GLBA").[7]

Both parties acknowledge that prior to Plaintiff's Motion, they were involved in negotiations regarding an agreed protective order, but that those communications ceased in late August, 2006 when Defendant learned that Plaintiff had been in contact with the United States Trustee's Office ("UST") over the issues involved in this adversary proceeding.[8] Defendant contends that Plaintiff's desire to share his discovery responses with the UST required consideration of principles involving

---

[7] Codified at 15 U.S.C. §§ 6801-6809. Under GLBA and the regulations issued thereunder, financial institutions are required to protect the confidentiality and use of non-public personal information that consumers provide to them. *Trans Union LLC v. F.T.C.* 295 F. 3d 42, 46 (C.A.D.C. 2002). Defendant argues that while GLBA permits disclosure for discovery purposes in civil actions, the strong interest in protecting the privacy of consumer financial information dictates that this Court enter a protective order.

[8] The Plaintiff is a panel trustee appointed to serve by the UST for Region 9. 28 U.S.C. § 586 (a)(1). It is not surprising to this Court that Plaintiff, as a panel trustee, has discussed the matters involved in this case with the UST for Region 9 or his staff. However, these discussions do not constitute or create a formal criminal investigation. Defendant's suggestion that Plaintiff's discussion has been with the "Criminal Division" of the UST's office is mistaken. There is no "Criminal Division" of the UST's office. By statute, the UST is required to report matters involving potential bankruptcy crimes to the U.S. Attorney's office. 28 U.S.C. § 586(a)(3)(F). It is the U.S. Attorney's job to prosecute criminal activity. The Defendant's confusion is likely the result of the fact that Dean Wyman, a staff attorney in the UST Region 9 office, wears two hats. Mr. Wyman, an employee of the UST's office, is also a special assistant U.S. Attorney for the Northern District of Ohio with the ability to investigate and prosecute criminal activity. His dual role, however, does not change the simple fact that Plaintiff's conversations with the UST for Region 9 and his staff does not put Defendant's Fifth Amendment rights at issue.

his Fifth Amendment right against self-incrimination, and that he needed additional time to retain counsel with expertise in this area before responding to Plaintiff's Requests.[9]

***B. Motion to Compel - Rule 37(a)***

Plaintiff brings his Motion To Compel pursuant to Fed. R. Civ. P. 37(a)(2) (incorporated through Fed. R. Bankr. P. 7037(a)(2)), which provides that, upon reasonable notice to other parties and all persons affected thereby, a party may apply for an order compelling discovery and sanctions, including attorney's fees, if a party fails to answer an interrogatory submitted under Rule 33 or fails to respond to a request for production of documents submitted under Rule 34.

Pursuant to Fed. R. Civ. P. 37(a)(1)(B)(incorporated through Fed. R. Bankr. P. 7037(a)(1)(B)), Plaintiff included a certification that he has in good faith conferred or attempted to

---

[9] The Court advised Defendant during the Pretrial that it would take this issue under advisement once it is formally raised, either in the form of a motion for protective order or other pleadings or filings wherein Defendant specifically invokes the Fifth Amendment privilege. In his Response, Defendant provided a list of authorities in support of the Fifth Amendment privilege argument, stating specifically, "***[s]hould*** Defendant Abel choose to assert his Fifth Amendment privilege against self-incrimination, he will rely upon the following cases:" (emphasis added). He further reiterated the need to retain counsel with expertise in that area of the law, but made no indication that he had done so or otherwise come to a definitive conclusion as to the applicability of his Fifth Amendment privilege in this adversary proceeding. Therefore, this Court does not view Defendant as having brought the issue before the Court in any procedurally appropriate manner. He has simply alluded at various times to the prospect of invoking his Fifth Amendment rights. Thus, any consideration or ruling herein by this Court regarding Defendant's Fifth Amendment rights would be premature. Furthermore, should Defendant decide to bring this issue before the Court, he must frame it in a manner that sets forth credible reasons why his responses would incriminate him. (*See e.g. In re Keller Financial Services of Florida, Inc*. 259 B.R. 392 (M.D. Fla, 2000) (Plaintiff-Trustee filed motion to compel discovery from former director of debtor. Former director filed motion for protective order invoking his Fifth Amendment privilege against self-incrimination and setting forth reasonable cause to believe that a criminal investigation was pending, and that the investigation related to the transactions with debtor that occurred when former director was decision maker. The Court granted defendant's motion in part)

confer with Defendant in an effort to secure the information or materials without court action. Plaintiff also requests sanctions under Fed. R. Civ. P. 37(a)(4) (incorporated through Fed. R. Bankr. P. 7037(a)(4)) relating to the filing of the Motion, including attorney's fees and any other relief this court deems appropriate.

### *1. Relevance Claims*

It is well-settled that the scope of discovery is within the broad discretion of the trial court. *Lewis v. ACB Business Services, Inc*., 135 F. 3d 389, 402 (6th Cir.1998); *Chrysler Corp. v. Fedders Corp*. 643 F. 2d 1229, 1240 (6thCir. 1981), *cert. denied*, 454 U.S. 893 (1981). The scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad. *Lewis*, 135 F. 3d at 402*; Mellon v. Cooper-Jarrett, Inc.*, 424 F. 2d 499, 501 (6th Cir. 1970). The test for relevance under Fed. R. Civ. P. 26(b)(1) is whether the information sought is reasonably calculated to lead to the discovery of admissible evidence. *Lewis,* 135 F. 3d at 402, *citing Oppenheimer Fund, Inc. V. Sanders*, 437 U.S. 340, 351(1978). Moreover, this court acknowledges that chapter 7 trustees are given wide latitude under the Bankruptcy Code to obtain documentation pertaining to the debtor's conduct or property. *See In re Bashour*, 124 B.R. 52, 54 (Bankr. N.D. Ohio 1991); *see also In re Federal Copper Tennessee, Inc.* 19 B.R. 177, 179 (Bankr. M.D. Tenn 1982).

The party objecting to interrogatory or production requests bears the burden of demonstrating specifically, by way of affidavits or other offer of evidence, how each request is either irrelevant, overly broad, unduly burdensome or oppressive. *A. Farber and Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006); *Breon v. Coca-Cola Bottling Company of New England,* 232 F.R.D. 49, 55 (D. Conn. 2005), *citing Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 42 (S.D.N.Y. 1984); *see also Kimbro v. I.C. System, Inc.,*

*2002 WL 1816820* at 1 (D.Conn 2002).

Defendant has not submitted any affidavits or other evidence in support of his claims that the answers and materials sought in Plaintiff's Requests are not relevant. He has simply intoned the familiar litany that the interrogatories and documents sought are irrelevant, unduly burdensome, and overly broad. As such, he has failed to carry his burden of demonstrating specifically why discovery should be denied on the basis of relevancy.

Plaintiff is a bankruptcy trustee with no historical involvement in the matters addressed in the adversary proceeding. His Requests are based upon the need to acquire further information explaining Defendant's involvement with CMR and Steve Harvey so as to determine what happened to CMR's assets. Plaintiff has sufficiently demonstrated that he possessed credible information showing, *inter alia*, that Defendant received funds of CMR; that his escrow account acted as a payment clearinghouse for Milling Away; that Defendant directed or at least advised Steve Harvey to make fraudulent conveyances; and that data had been found on CMR's computers indicating that Defendant or his title companies were involved in fabricating documents designed to show distinctions between CMR and RMS that didn't really exist.[10] Moreover, Exhibits B and C to Plaintiff's Motion to Compel clearly indicate that Plaintiff's counsel provided a detailed explanation to Defendant's counsel as to the relevancy of each propounded interrogatory. Accordingly, based on the foregoing

---

[10] Plaintiff alleges in his complaint that RMS is an alter ego of CMR and that the two entities are indistinguishable, ie., that they share the same address, phone numbers, and fax numbers; that they have common employees, contact people, and principals; that the two entities have represented to others that they are effectively the same businesses; and that the assets of CMR were transferred to RMS such that RMS is a successor in interest to CMR. Exhibits 5 and 6 to Plaintiff's Reply reveal that Defendant had concerns about potential legal issues attendant to the assignment of CMR's receivables to RMS.

analysis, this Court rejects Defendant's relevancy objections.

### *2. Privilege Claims*

To protect from abuse, matters protected by certain privileges are not discoverable. Fed. R. Civ. P. 26(b)(1)(incorporated through Fed. R. Bankr. P. 7026(b)(1)). However, it is the claimant's burden to establish the existence of that privilege. *Enron Broadband Services, L.P. v. Travelers Casualty and Surety Company of America (In re Enron Corp),* 349 B.R. 115, 126 (Bankr. S.D.N.Y. 2006) *citing von Bulow by Ausberg v. von Bulow,* 811 F. 2d 136, 146 (2nd Cir. 1987); *United States v. Dakota*, 197 F. 3d 821, 825 (6th Cir. 1999); *In re OM Group Securities Litigation,* 226 F.R.D. 579, 589 (N.D. Ohio, 2005). Boilerplate objections, blanket refusals, and conclusory statements are not sufficient to support a claim of privilege. *See Burlington Northern & Santa Fe Railway Company v. United States District Court For The District of Montana,* 408 F. 3d 1142, 1149 (9th Cir. 2005) *cert. den*. 126 S.Ct. 428 (2005); *see also In re The GHR Companies, Inc.*, 41 B.R. 666, 667 (Bankr. D. Mass. 1984), *citing In re Federal Copper of Tennessee, Inc.* 19 B.R. 177, 181 (Bankr. M.D. Tenn. 1982).

In addition, Fed. R. Civ. P. 26(b)(5)(incorporated through Fed. R. Bankr. P. 7026 (b)(5)) requires that the party asserting a privilege provide the court with a privilege log to assist both the court and counsel.

> When a party withholds information otherwise discoverable under these rules by claiming that it is privileged *** the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege."
> Fed. R. Civ. P. 26(B)(5); Fed. R. Bankr. P. 7026(b)(5)).

The log should also identify each document's author and recipient, as well as reasons why the

06-05009-mss    Doc 77    FILED 11/08/06    ENTERED 11/09/06 07:43:06    Page 9 of 13

information is claimed to be privileged. *Breon,* 232 F.R.D. at 55*; see Guy v. United Healthcare Corp,* 154 F.R.D. 172, 178 (S.D. Ohio 1993) (Corporation failed to carry burden of establishing privilege for documents which were not described or referred to in any way on privilege log, thus documents had to be produced); *see also Bowne v. AmBase, 150 F.R.D. 465, 474* (S.D.N.Y. 1993) (The privilege log is an essential tool which allows the parties and the court to make an intelligent decision as to whether a privilege or immunity exists).[11]

Here, Defendant claims that certain items outlined in the Requests are not subject to discovery because they contain privileged information. However, Defendant's arguments contain merely bald assertions and skeletal outlines of sweeping categories of documents that are allegedly personal and confidential. Again, conspicuously absent from his pleadings are any attachments remotely resembling a privilege log, affidavit, deposition testimony, lists of documents with accompanying explanations that would include the specific content, dates, parties, titles, names of authors and recipients, or other evidentiary support for the claim of privilege. Simply stated, nowhere in the record of this proceeding has Defendant identified specific documents claimed to be privileged. His unsubstantiated contentions are insufficient to carry his burden of proof.

**3.** *Tax Returns*

Defendant argues that he is unable to produce the requested tax records because they are not in his possession or under his control, having been seized from his accountant by the Federal Bureau

---

[11] While a privilege log is a critical step in discharging one's burden of establishing the existence of a privilege, failure to supply such within the 30-day limit for responding to document requests does not result in a *per se* waiver of privilege. *Burlington Northern and Santa Fe Railway Co., 408 F. 3d* at 1148. Courts must make a case by case determination, taking into account various factors in the context of reasonableness, not as a mechanistic determination of whether the information is provided in a particular format. *Id*. at 1149.

06-05009-mss    Doc 77    FILED 11/08/06    ENTERED 11/09/06 07:43:06    Page 10 of 13

of Investigation ("FBI") in an unrelated matter. He further contends that the tax records should remain confidential because they are not relevant or calculated to lead to the discovery of admissible evidence. Defendant lists several authorities that purport to support his arguments.[12]

First, Defendant's contention that he no longer has possession of the requested records is nothing more than a stalling tactic. In an e-mail message to Defendant's counsel dated July 10, 2005 (*See* Motion To Compel, Exhibits B,C), counsel for Plaintiff specifically offered to contact investigating agents of the FBI, and requested names and phone numbers so as to obtain the information directly. However, to this Court's most recent knowledge, Defendant has not provided any such names or numbers to Plaintiff nor explained why he has not done so.

Next, as this Court has already concluded, Defendant's objections to the requested information on the basis of relevance are meritless. Further, none of the authorities cited by Defendant in his Response are directly supportive of the privilege argument nor applicable in this context. Two of the cases cited, *Loew's v. Martin,* 10 F.R.D.143, 147 (N.D. Ohio 1949) and *O'Connell v. Olsen & Ugelstadt,* 10 F.R.D. 142 (N.D. Ohio 1949) are antiquated decisions that have been effectively overruled for this proposition, both legislatively and by a later Supreme Court case.[13]

---

[12]In his Response, Defendant also informed the Court that the issue regarding the production of his social security number has been rendered moot; that as to abated discovery issues, he has produced an additional 71 pages of documents to Plaintiff; and that his counsel is in the process of reviewing another stack of documents for submission to Plaintiff by November 2, 2006.

[13] *St. Regis Paper Co. v. United States, 368 U.S. 208* (Supreme Court's acknowledgement that tax returns were subject to disclosure with clear directive as to how an absolute privilege might be accorded by Congress) "Given the decision in St.Regis Paper Co. v. United States, and the repeated failure of congress to alter the discoverable status of tax returns, as observed in that case, all of which occurred subsequent to the latest decisions of the Ohio State courts, the conclusion must be drawn that *** tax returns are subject to discovery in civil litigation between

Two of the remaining cases cited, *Credit Life Ins. Co. v. Uniworld Ins. Co. Ltd.* 94 F.R.D. 113 (S.D. Ohio 1982), and *In re: Dayco Corporation Derivative Securities Litigation,* 99 F.R.D. 616 (S.D. Ohio 1983) are based on Ohio law governing privilege instead of Federal Common Law. *See Enron Broadband Services, L.P. v. Travelers Casualty and Surety Company of America (In re Enron Corp),* 349 B.R. at 126 (Federal law rather than state law governs the applicability of privilege in a case where Chapter 11 debtor brought adversary proceeding against surety under section 542 of the Bankruptcy Code and state law for breach of contract); *see also French v. Miller,* 247 B.R. 704 (Bankr. N.D. Ohio 2000) (Federal common law governed privilege analysis where Trustee sought to revoke debtors' discharge pursuant to specific provisions of the Bankruptcy Code ). However, even if this Court's decision were governed by Ohio law (there appears to be no material difference between Ohio Law and Federal Common Law governing privilege),[14] both cases cited by Defendant acknowledge that tax returns are not privileged under Ohio law, and that disclosure is appropriate if they are significantly relevant to issues raised in the case.[15]

### III. CONCLUSION

For the reasons stated above, Plaintiff's Motion is granted. Defendant's Motion for Protective Order is denied. Defendant is ordered to respond to Plaintiff's Requests by no later than November

---

private parties." *Credit Life Insurance Co. v. Uniworld Insurance Company Ltd.*, 94 F.R.D. 113, 119 (S.D. Ohio 1982).

[14] *Guy v. United Healthcare Corp.* 154 F.R.D. 172, 177 (S.D. Ohio 1993), *citing State v. Post,* 32 Ohio St. 3d 380, 385 (1987).

[15] Defendant also cites to *In re: Bankers Trust Co.*, 61 F. 3d 465, 469 (6th Cir. 1995) in support of his argument that he is not required to produce the tax returns because they are not in his possession. This Court has already addressed that argument in its earlier discussion of the privilege doctrine.

-12-

24, 2006. Pursuant to Fed. R. Bankr. P. 7037(a)(4), Plaintiff is awarded sanctions in the form of attorney's fees incurred in the preparation of the Motion to Compel. By no later than December 1, 2006, Plaintiff shall file with this Court an affidavit addressing the issue of time expended and hourly fees logged in preparation of the Motion To Compel. Defendant shall have until no later than December 15, 2006 to file a responsive pleading.

Furthermore, this Court cautions Defendant that if he fails to produce all of the responses and documents by the date set forth above, this Court may exercise its discretion to hold Defendant in contempt, strike Defendant's answer and proceed to a hearing for the entry of judgment in Plaintiff's favor, or provide such other relief as is appropriate.

# # #

cc: Gordon D. Woolbert
　　Chrysanthe Vassiles
　　Joel Dayton
　　Donald W. Davis Jr.
　　Morris H. Laatsch
　　Robert Thomas
　　David A. Schaefer
　　Robert R. Kracht
　　Bruce R. Shrader, II